Hemphill, C. J.
This was a suit commenced under the provisions of the act of 4th February, 1841, “ entitled an act supplementary to an act, to detect fraudulent land certificates,” etc., to obtain from the government a certificate for one-third of a league of land. The petitioner alleges that his intestate, George Creth, was a single man and arrived in Texas in the month of December, 1835, for the purpose of becoming a permanent citizen of Texas; and that on his way from San Felipe to the residence of his sister, on the Guadaloupe river, in Gonzales county, he was killed by the Indians — that his legal representatives are entitled to one-third of a league of land, etc.
To this petition a demurrer was filed on the behalf of the republic, and it was sustained by the court.
The question for our decision is, was George Creth entitled, under the laws or constitution, to the amount of land claimed? He cannot claim under the constitution, as the grants of land provided for by that instrument are extended only to citizens resident in Texas at the formation of the constitution itself. The land law of the 14th December, 1837, requires proof only of residence in the country at the date of the declaration of independence. This was on the 2d of March, 1836, and the deceased intestate having departed this life in December, 1835» cannot claim any of the bounties dispensed so liberally by the organic law, but which were restricted to recipients in actual being or existence. at the date of the grant.
Nor does the claim derive any more solid support from the colonization laws of Coahuila and Texas.
It has been decided by the supreme court of the republic in the cases of the Board of Land Commissioners of Milam County v. Wm. W. Bell, Dallam, 366, and the Republic of Texas v. Heirs of Joseph Inglisli, deceased, id. 608, that the colonization law of 24th March, 1825, was repealed by decree No. 190, of the date of the 28th April, 1832. This latter decree was repealed by a third plan for the disposal of public lands, being decree No. 272, adopted March 26, 1834, by which latter decree all further colonization contracts were prohibited from being made; and all those heretofore made were required to be- *(59) strictly fulfilled, and in entire accordance witb tbe law of the 24th. March, 1825. But as in the case of the heirs of Inglish there is no allegation in this petition, that the deceased was brought into the country as a colonist, or received as such by any empresario in fulfillment of any subsisting colonization contract. Had this allegation been made and proven, he would have had the like claim to lands with any other colonist of similar qualifications, who had died before the declaration of independence. No aid can be derived to this claim from art. 82 of decree No. 272, which authorizes titles to lands to be issued to the inhabitants of the Nacogdoches frontier; nor from decree No. 309, of the 2d May, 1835, which authorized lands to £>e given to all persons and families then residing in Texas, and who had not received lands according to the colonization laws. This law was not prospective in its operation, and its benefits cannot, therefore, be extended to emigrants arriving subsequent to its passage.
But we are referred to article 15th of the declaration of the consultation, as a provision fully supplying all the deficiencies of former legislation, and insuring to emigrants, who were willing to encounter the hazards of our conflict for constitutional liberty, the quantum of lands which were therefore granted under the laws of colonization. That article is expressed in the following terms: “ All persons now in Texas and performing the duties of citizens, who have not acquired their quantum of land, shall be entitled to the benefit of the laws of colonization under which they emigrated; and all persons who may emigrate to Texas during her conflict for constitutional liberty, and perform the duties of citizens, shall also receive the benefit of the law under which they emigrated.” From the expressions used, it would seem to have been the opinion of this constituent body that the claims of all persons residing in the country at the time of the consultation, or who might afterwards arrive during the conflict, were provided for by some one of the various colonization laws which had once been in force; but, by an examination of these decrees, we have found that after the 2d May, 1835, there was no law in existence granting land to emigrants, except in those parts where the colonization contracts had not expired; and these were controlled by the law of 1825. A party entitled to the benefits of a law under which he may have emigrated cannot, from that provision, claim under a law which had expired previous to his arrival. The expressions of the article referred to are general, embracing as well emigrants before as after the 2d May, 1835; but its provisions can confer nothing on persons arriving after the latter period, except securing to them, under particular circumstances, the benefits of the original law of colonization.
*(60) The deceased not haying arrived in the country before the 2d May, 1835, and it not being alleged or proven that he had been received as a colonist, within the limits of any colonization contract, the claim was properly rejected in the court below.
And it is ordered that the judgment be affirmed.